# EXHIBIT 2

CETRULO & CAPONE LLP
COUNSELLORS AT LAW
TWO SEAPORT LANE
BOSTON, MASSACHUSETTS 02210
TELEPHONE (617) 217-5500
FACSIMILE (617) 217-5200
www.cetcap.com

NEW YORK, NEW YORK
TELEPHONE (212) 635-2230

PROVIDENCE, RHODE ISLAND
TELEPHONE (401) 274-7850

(617) 217-5218
dburns@cetcap.com

April 4, 2006

**VIA FACSIMILE & FIRST CLASS MAIL**

William E. O'Gara, Esquire
Pannone Lopes & Devereaux
One Financial Plaza, Suite 1800
Providence, RI 02903
Fax: (401) 824-5123

**Re:** ***Delta Mechanical Contractors, LLC v. Hanover Insurance Company, et al.***
**Civil Action No.: 05-489T**
**C&C File No.: 1012-0065**

Dear Attorney O'Gara:

As an initial matter, I want to thank you for the professionalism and understanding that you demonstrated over the past week while I took care of family medical emergencies. It was most appreciated.

The remainder of this letter sets forth the analysis of Delta Mechanical Contractors, LLC's ("Delta") delay claim in connection with the above-referenced action based upon the documents and information provided by Delta in support of its delay claim. Once you have discussed the information set forth in this letter with your client, please contact me and advise as to how your client wishes to proceed.

Greyhawk North America, LLC ("Greyhawk"), the consultant for my client, the Hanover Insurance Company ("Hanover"), has completed its detailed analysis of the delay claim put forth by Delta in connection with the above-referenced action as well as the documents and information provided by Delta in support of the delay claim. Although Greyhawk is of the opinion that there may, in fact, be evidence of acts and/or omissions of the U.S. Department of the Interior, the owner of the Administration/Visitors Center, Rhode Island National Wildlife Refuge Center (the "Project"), which resulted in delays, interference and/or hindrance to the orderly progression of work on the Project, including work within Delta's scope of work, Greyhawk has determined that the documents produced by Delta do not support or demonstrate delta's entitlement to delay damages in connection with the Project.

Greyhawk identified numerous documents which they requested, yet did not receive. To the extent that these documents exist and can be produced, Greyhawk is willing to review them

and, if appriopriate, reconsider its analysis. To the extent that the missing documentation cannot be produced, Greyhawk is forced to conclude that Delta cannot properly document and prove its entitlement to delay claims in connection with the Project.

The following two sections detail the deficiencies in the production of documentation and the deficiencies in the documents themselves. Again, to the extent that Delta is able to produce further documentation in support of its delay claim, Greyhawk is ready and willing to review them and, if appropriate, reconsider its analysis.

Deficiencies in the Production of Documents

On February 2, 2006, I sent you a letter in which I set forth eight requests for documents necessary to allow Greyhawk to conduct the delay claim analysis (the "February Letter"). In response, I received documents which were produced without any indication as to which request the particular document was being provided. Without such "indexing," Greyhawk was faced with the difficult task of trying to correlate the document produced with a particular request. Moreover, Delta's claim and the documents allegedly in support were all produced without any narrative in support of its claim. Finally, the February Letter sets forth a number of specific questions to which we sought responses, but never received.

In summary, Delta alleges entitlement to delay damages but fails to: (1) provide Hanover and Greyhawk with a detailed narrative setting forth the legal basis for entitlement to delay damages; (2) produce documents clearly supporting and demonstrating Delta's entitlement to delay damages; and (3) answer questions which would allow Hanover and Greyhawk to adequately analayze and assess the validity of Delta's delay claim. As you are well aware, the burden is on Delta to prove entitlement to delay damages at trial. Based upon the information Greyhawk has received to date, Delta has not proven entitlement to delay damages.

To the extent that Delta is better able to support its delay claim, I ask that Delta immediately do so. As I have stated to you previously, Hanover will pay any valid delay damages for which Delta can demonstrate clear entitlement. Hanover will not pay, however, an unsupported delay claim merely to avoid the incovenience of trial.

Deficiencies in the Documentation

The Subcontract

Greyhawk has repeatedly requested but has yet to receive the subcontract between Delta and the general contractor, White & Carr, Incorporated ("White"). Obviously, any delay claim analysis begins with a comprehensive review of the rights and obligations of the parties under the subcontract. Accordingly, I request that you provide me with a copy of the subcontract at your earliest convenience so that Greyhawk may more fully assess Delta's delay claim.

Greyhawk noted that other White subcontracts on the Project contain a provision obligating the subcontractor to *promptly* make all claims to White for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. To the extent that this provision also appears in Delta's subcontract, Greyhawk has determined that Delta failed to demonstrate that it submitted its claims promptly.

Document Request #1 and Questions #1-2

In the February Letter, I requested Delta's As-Planned Schedule for performance of its work. In addition, I also requested answers to the following two questions. First, did Delta submit an as-planned schedule to White at the time it commenced work? Second, was Delta's As Planned Schedule accepted and approved? Finally, I asked that Delta provide documents corroborating its position.

In response, Delta failed to state whether it created an As-Planned Schedule, whether it submitted an As-Planned Schedule and whether White ever accepted it. Delta did submit a schedule attached to *"WCI - Schedule Memo,"* dated August 25, 2003, but Delta did not provide any comments to the schedule. The schedule showed, in relevant part, the following:

| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| **1** | **Two-story Administration & Visitors Center** | **179 days** | **8/7/03** | **4/13/04** |
| | | | | |
| **86** | **Plumbing** | **75 days** | **11/17/03** | **2/27/04** |
| 87 | Rough–in plumbing in drywall walls | 2 wks | 11/17/03 | 11/28/03 |
| 88 | Set plumbing fixtures and trim | 1 wk | 2/16/04 | 2/20/04 |
| 89 | Flush, test & clean piping and fixtures | 1 wk | 2/23/03 | 2/27/03 |
| | | | | |
| 95 | **Heating and Ventilating – AC** | **75 days** | **11/17/03** | **2/27/04** |
| 96 | Set equipment in mechanical room | 2 wks | 11/17/03 | 11/28/03 |
| 97 | Rough-in mechanical | 4 wks | 12/1/03 | 12/26/03 |
| 98 | Install a/c ducts | 3 wks | 12/29/03 | 1/16/04 |
| 99 | Install sprinkler system [not Delta] | 3 wks | 12/29/03 | 1/16/04 |
| 100 | Set HVAC trim and test and balance system | 1 wks | 2/23/04 | 2/27/04 |

Greyhawk has determined that delta failed to demonstrate any correlation or entitlement to delay damages based upon the schedule provided. Again, to the extent that Delta can provide the requested As-Planned Schedule, answers to the questions asked and the documents supporting the answers to the questions asked, Greyhawk would be happy to review and analyze them.

Document Request #2

In the February Letter, I requested Delta's As-Built Schedule for performance of its work. I noted that, without such a schedule, Delta has failed to illustrate how it was impacted and failed to identify any events which impacted its performance or delayed its As-Planned Schedule. I further requested all documents which constitute notice or proof that Delta experienced a delay during its performance of the work, along with letters showing the date and time in which the notice was given to White.

In response, Delta failed to produce its As-Built Schedule and failed to state whether it had even submitted an As-Built Schedule to White. Delta did produce its letter to White, dated March 15, 2004, which stated that Delta anticipated a delay during its performance of the work based upon a revised schedule dated March 8, 2004. This letter contained a request for an extension of time (from one to four weeks) for various scope items. Delta also produced a schedule that contained the following notation in the title block: "WCI Schedule Update 03-08-04." This schedule showed the following information:

| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 1 | Two-story Administration & Visitors Center | 239 days | 8/7/03 | 7/6/04 |
| | | | | |
| **86** | **Plumbing** | **55 days** | **3/15/04** | **5/28/04** |
| 87 | Rough–in plumbing in drywall walls | 3 wks | 3/15/04 | 5/28/04 |
| 88 | Set plumbing fixtures and trim | 1 wk | 5/17/04 | 5/21/04 |
| 89 | Flush, test & clean piping and fixtures | 1 wk | 5/24/04 | 5/28/04 |
| | | | | |
| 95 | **Heating and Ventilating – AC** | **65 days** | **3/1/04** | **5/28/04** |
| 96 | Set equipment in mechanical room | 2 wks | 3/1/04 | 3/12/04 |
| 97 | Rough-in mechanical | 2 wks | 3/1/04 | 3/12/04 |
| 98 | Install a/c ducts | 2 wks | 3/1/04 | 3/12/04 |
| 99 | Install sprinkler system | 2 wks | 3/15/04 | 3/26/04 |
| 100 | Set HVAC trim and test and balance system | 1 wk | 5/24/04 | 5/28/04 |

Greyhawk acknowledged that the revised scheduled illustrates that the original start and finish dates for Delta's work (plumbing and HVAC) were to be postponed by approximately four months. Delta has failed to demonstrate and document, however, how it was damaged by this postponement. Furthermore, Delta failed to demonstrate that it objected to the revised dates indicated in the revised schedule. Instead, Delta requested approximately four additional weeks to complete its work based upon the revised schedule. In fact, Delta stated in its March 15 letter that it never received the first schedule. To the extent that Delta did, in fact, receive the first schedule, Delta did not rely on the first schedule as its As-Planned Schedule because Delta's March 15 letter provided, in pertinent part, "This is regarding the construction schedule issued on Tuesday, March 9, 2004 for the above project. *This being the first schedule provided*, we

immediately forwarded it to our sub-contractors as well as our vendors for their review and comment." (Emphasis added.)

Document Request #3

In the February Letter, I requested copies of all prior notices of delay and/or requests for extension of time (including those made in connection with change orders) to White indicating that the owner and/or White were delaying Delta.

In response, Delta failed to produce documents demonstrating that it had ever made a request to White for an extension of time to complete any of the change orders. Of the change order requests (numbers 3, 6 through 11, 13 and 16) which Delta produced, Greyhawk noted that Delta failed to request an extension of time in any of them.

Document Request #4

In the February Letter, I requested Delta's List of Submittals including when it sent submittals to White and when it received approvals on such items as shop drawings and samples.

In response, Delta only provided its Submittal Log. Delta failed to provide the requested information as to when it received approvals on various items (e.g., shop drawings and samples) so as to illustrate that it was proceeding in accordance with its As-Planned Schedule or that it was impacted by untimely responses by others.

Document Request #5

In the February Letter, I rqeuested all of Delta's applications for payments.

In response, Delta produced sixteen (16) Payment Applications. The first payment application covered the period ending 1/12/04. Delta submitted a payment application for each of the subsequent months through 5/25/05 (with two exceptions: (1) no payment application for 4/12/05; and (2) final payment application was dated 5/25/05 instead of 5/12/05). Based upon its analysis of these documents, Greyhawk concluded that Delta started billing approximately December 15, 2003, which would be approximately three months earlier than the start date of the second schedule referenced above. Delta ceased working for White, however, on April 8, 2005, the date of White's default, and not on May 25, 2005 (the date on the last payment application). Therefore, Delta ceased work for White approximately eleven months after the finish date of the second schedule referenced above. You will note that Hanover had no obligation under the payment bond for delays that Delta may have incurred while it was working directly for the owner (i.e., after April 8, 2005).

Document Request #6

In the February Letter, I requested all of Delta's change orders that contain associated requests for extensions of time and/or that impacted the As-Planned schedule.

In response, Delta produced nine change order requests (numbers 3, 6 through 11, 13 and 16), of which not a single one contained a request for an extension of time. Again, based upon the (lack of) documentation provided in support of its delay claim, Greyhawk is forced to conclude that Delta has failed to demonstrate and document a valid delay claim for which Delta is entitled to compensation.

Document Request #7/Question #3

In the February Letter, I requested the dates for each of the eight categories of Delta's delay claim.

In response, Delta provided dates but failed to provide them in a manner which Greyhawk could understand. In addition, Delta failed to provide any date for the category "Loss of Potential Projects." In addition to failing to provide a date for this category, Delta failed to provide any justification and/or causation for this category. Moreover, Greyhawk noted that Delta did not even include this item on the spreadsheet it submitted on February 22, 2006 (the "Spreadsheet").

Greyhawk determined the dates for the other categories based upon the dates on the Spreadsheet, but the Spreadsheet contains no title or date indicating when the document was prepared.

Furthermore, Delta submitted the Spreadsheet to illustrate a claim that totaled $152,970.14, but Greyhawk has determined that Delta made an error in its calculations by which it "double dipped" $20,281.27. Greyhawk determined that Delta added the "Wage Increases" twice: first, by showing the subtotal of 5 wage increase items as $20,281.27 and then adding the 5 numbers again in the total at the bottom.

Document Request #8/Question #4

In the February Letter, I requested the following with respect to Delta's September 7, 2005 letter:

a. with regards to Item #1 (Extended PM), the basis, breakdown and substantiation of the $90/hour rate; the basis and substantiation for 432 hours "Extended PM" labor (i.e., the original cost estimate and breakdown); and the

justification/substantiation for the $38,888 in claimed costs for "Extended PM" labor;

b. with regards to Item #2 (Extended Project Super), the basis, breakdown and substantiation of the $75/hour rate; the basis and substantiation for 108 hours "Extended Project Super" labor (i.e., the original cost estimate and breakdown); and the justification/substantiation for the $8,100 in claimed costs for "Extended Project Super" labor;

c. with regards to Item #3 (Extended Mobile Storage), the substantiation for how, why and when these costs ($2,160) were incurred;

d. with regards to Item #4 (Extended Welder), substantiation or basis for consideration, or proof that payments were actually required or made to a specific welder who has not been identified;

e. with regards to item #5 (Balancing Sub), substantiation for its position that its Balancing Subcontractor was entitled to an increase on account of delay and that it expended the additional time claimed;

f. with regards to Item #6 (Loss of Potential Projects), please state the basis for the alleged entitlement under the payment bond to a claim based on "loss of potential projects,' please substantiate these alleged damages, please specifiy the projects allegedly lost and please specify how these alleged damages were calculated;

g. with regards to Item #7 (Wage Increase), substantiation or basis for consideration, or proof that payments were actually required as a result of wage increases during that period; and

h. with regards to Item #8 (O&P 15%), please state the basis for the alleged entitlement under the payment bond for this claim and please substantiate these alleged damages.

In response, Delta failed to provide any documents in response to these inquiries and Delta also failed to provide any answers to each of the above listed items. Delta failed to attribute any part of its delay claim to the period when it was working directly for the owner (i.e., April 29, 2005 through the completion of the project, on or about January 2006).

Delta has presented its claim by means of the Total Cost Method. As such, the burden of proof is on Delta to prove: (1) the bid was reasonable and contained no material errors; (2) the actual costs were reasonable and accurately recorded to the job; (3) the contractor was blameless for the overrun; and (4) the claim could not be priced under any other method. In addition, please note the consequences of mathematical errors and double-dipping on the validity and viability of any total cost method claim.

As I have previously stated, please contact me after you have had a chance to discuss this information with your client. Hanover and Greyhawk have made a good faith effort to investigate Delta's delay claim and Greyhawk is prepared to review and analyze any further information that Delta can provide in support of its claim.

Thank you for your attention to this matter and thank you again for your professionalism and understanding.

Very truly yours,

Dwight T. Burns, III

DTB

cc: Bert J. Capone, Esquire
Jennifer Whelan, Esquire

# FACSIMILE TRANSMITTAL SHEET

---

**CETRULO & CAPONE LLP**
**TWO SEAPORT LANE**
**BOSTON, MA 02210**

**MAIN NUMBER:** **(617) 217-5500**
**FAX NUMBER:** **(617) 217-5200**

---

**FROM:** **Dwight T. Burns, III** **CLIENT #:** **01012**

**DATE:** **April 4, 2006** **MATTER #:** **0065**

**NUMBER OF PAGES SENT (Including Cover Sheet): 9**

---

| [illegible] | FIRM | FAX NUMBER | MAIN NUMBER |
|---|---|---|---|
| William E. O'Gara, Esq. | Pannone Lopes & Devereaux | (401) 824-5123 | |
| | | | |

---

**COMMENTS:**

Please see attached.

---

IF YOU EXPERIENCE ANY PROBLEMS WITH THIS TRANSMISSION OR DO NOT RECEIVE ALL PAGES, PLEASE CALL (617) 217-5330.

This telecopy is attorney-client privileged and contains confidential information intended only for the person(s) named above. 'Any other distribution, copying or disclosure is strictly prohibited. If you have received this telecopy in error, please notify us immediately by telephone and return the original transmission to us by mail without making a copy.

P. 1

* * * COM. ICATION RESULT REPORT ( APR. 4. 2006 4:18PM ) * * *

FAX HEADER: CETRULO&CAPONE

TRANSMITTED/STORED : APR. 4. 2006 4:14PM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|---|
| 565 | MEMORY TX | | #37814018245123 | OK | 9/9 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-3) NO ANSWER
E-2) BUSY
E-4) NO FACSIMILE CONNECTION

## FACSIMILE TRANSMITTAL SHEET

**CETRULO & CAPONE LLP**
**TWO SEAPORT LANE**
**BOSTON, MA 02210**

**MAIN NUMBER:** (617) 217-5500
**FAX NUMBER:** (617) 217-5200

**FROM:** Dwight T. Burns, III

**CLIENT #:** 01012

**DATE:** April 4, 2006

**MATTER #:** 0065

**NUMBER OF PAGES SENT (Including Cover Sheet):** 9

| TO: | FIRM: | FAX NUMBER: | MAIN NUMBER: |
|---|---|---|---|
| William E. O'Gara, Esq. | Pannone Lopes & Devereaux | (401) 824-5123 | |
| | | | |

**COMMENTS:**

Please see attached.

IF YOU EXPERIENCE ANY PROBLEMS WITH THIS TRANSMISSION OR DO NOT RECEIVE ALL PAGES, PLEASE CALL (617) 217-5330.

This telecopy is attorney-client privileged and contains confidential information intended only for the person(s) named above. 'Any other distribution, copying or disclosure is strictly prohibited. If you have received this telecopy in error, please notify us immediately by telephone and return the original transmission to us by mail without making a copy.