# EXHIBIT 3

CETRULO & CAPONE LLP
COUNSELLORS AT LAW
TWO SEAPORT LANE
BOSTON, MASSACHUSETTS 02210
TELEPHONE (617) 217-5500
FACSIMILE (617) 217-5200
www.cetcap.com

NEW YORK, NEW YORK
TELEPHONE (212) 635-2230

PROVIDENCE, RHODE ISLAND
TELEPHONE (401) 274-7850

(617) 217-5218
dburns@cetcap.com

June 27, 2006

**VIA FIRST CLASS MAIL**

William E. O'Gara, Esquire
Pannone Lopes & Devereaux LLC
1800 Financial Plaza
Providence, RI 02903

**Re: *Delta Mechanical Contractors, LLC v. Hanover Insurance Company, et al.***
**Civil Action No.: 05-489T**
**C&C File No.: 1012-0065**

Dear Attorney O'Gara:

This letter summarizes Greyhawk North America, LLC's (Greyhawk") analysis of the additional documents submitted by Delta Mechanical Contractors, LLC ("Delta") on April 27, 2006 (the "Additional Production") in further support of its delay claim in connection with the above-referenced action.

Greyhawk, the consultant for my client, the Hanover Insurance Company ("Hanover"), has completed its detailed analysis of the additional documents produced by Delta in further support of its delay claim in connection with the above-referenced action and has determined that the additional documents do not materially alter Greyhawk's previous conclusions that Delta has failed to prove its entitlement to delay damages and has failed to adequately document and support its claim. Although Greyhawk is of the opinion that Delta may be entitled to compensation for some wage increases, Delta has failed to adequately document and support this claim.

There are still numerous documents that I identified and requested, but which Delta has still not produced. To the extent that these documents exist and can be produced, Greyhawk is willing to review them and, if appriopriate, reconsider its analysis. To the extent that the missing documentation cannot be produced, Greyhawk is forced to conclude that Delta cannot properly document and prove its entitlement to delay damages in connection with the Project.

On February 2, 2006, I sent you a letter in which I set forth eight requests for documents necessary to allow Greyhawk to conduct the delay claim analysis (the "February Letter"). Despite two separate productions of documents by Delta, I have still not received the requested

documentation necessary to assess Delta's delay claim. The following details the deficiencies in the documentation of Delta's delay claim.

In the February Letter, I requested Delta's as-planned schedule. In connection with the Additional Production, you advised that Delta had not submitted an as-planned schedule because there was no contractual requirement that Delta submit such a schedule. Please note that, notwithstanding my request, you have still not produced an executed copy of the Delta subcontract. Indeed, you have failed to produce any contract documents. As I previously noted, any entitlement to delay damages necessarily begins with a review of the contract documents. Nevertheless, based upon Greyhawk's review of an unsigned subcontract, Greyhawk disagrees that the provision you quoted, provision 9.1, eliminates the need for an as-planned schedule.

With respect to Exhibit 1 to the Additional Production, please note that the March 12, 2004 letter was previously produced to Greyhawk and determined to be unsupportive of Delta's delay claim. With respect to the newly submitted December 12, 2003 letter regarding notice that Delta will seek appropriate compensation if it experiences interference with its work again, Greyhawk notes that this document does not satisfy the requisite notice requirements for all of Delta's delay claim. Indeed, Delta did not submit its delay claim to the surety until almost two years later (i.e., September 7, 2005). Furthermore, the testimony of Delta's project manager does not satisfy the requirement that Delta provide timely written notice of each delay. Moreover, our review of 9 change orders requests by Delta demonstrate that Delta failed to request additional costs, extensions of time and/or damages for delay in any of these change order requests.

Notwithstanding my multiple requests for a narrative in support of Delta's claim, I have yet to receive such a narrative. To the extent that your comments attributing Delta's delays to White & Carr, Incorporated's ("White") alleged failure to manage the Project (with four cited instances from October, 2003 through June, 2004) constitutes a narrative, you have failed to address the period from June, 2004 through February, 2006 for which Delta seeks compensation for extended project management, supervision, wage increase costs, etc.

Delta has failed to acknowledge that it incurred much of its alleged delay damages during the period after Delta ceased working for White (i.e., April 8, 2005). After it ceased working for White, Delta contracted directly with the Project owner. Hanover has no liability under its bond for work that Delta performed under a contract directly with the Project owner.

The following conclusions by Greyhawk have not changed because the Additional Production included nothing new on these subjects:

1. Delta may be entitled to some wage increases but Delta has failed to document and support this claim;

2. Delta has still failed to respond to our request for a breakdown of what delays were caused by the owner and what delays were caused by White;

3. Documents indicate that Delta was complicit in some of the delays on the Project;

4. Delta has failed to substantiate the $90/hour rate for "Extended PM", original cost estimate and breakdown and, to the extent that they are based on industry standards, failed to produce a copy of the standards;

5. Delta has failed to substantiate the $75/hour rate for Extended Project Superintendent and, to the extent that they are based on industry standards, failed to produce a copy of the standards;

6. Delta has failed to substantiate how, why and when the Extended Mobile Storage costs were incurred and your comment that the rate was $165/month is insufficient given the lack of a rental contract or any evidence as to why White was solely responsible for the extra period;

7. Delta has failed to substantiate the payments to an unidentified welder(s) (i.e., failed to identify why Delta could not have earlier removed or returned welding equipment that was on-site for 26 weeks);

8. Delta has failed to substantiate its conclusion that the Balancing Subcontractor is entitled to delay damages;

9. Delta has failed to substantiate its claim for loss of potential projects and has failed to identify the projects lost and how the damages were calculated; and

10. Delta has failed to substantiate its entitlement to O&P of 15%.

Please also note that Delta submitted its delay claim via the Total Cost Method but Delta has failed to prove and document: (1) its bid was reasonable and contained no material errors; (2) the actual costs were reasonable and accurately recorded to the job; (3) the contractor was blameless for any of the overrun; and (4) the claim could not be priced under any other method.

You are well aware that the burden rests with Delta to prove its entitlement to delay damages and to document and support its delay damages. To date, Delta has failed in this regard. Given the significant discovery costs awaiting both parties once the automatic disclosures are ordered, I respectfully suggest that both parties would be best served by resolving this claim outside of the federal court system. Nonetheless, Hanover is unwilling to pay delay damages that Delta cannot prove and document. Therefore, given that Delta would be required to produce all relevant documentation through automatic disclosures, I again request that you immediately provide me with all of the requested documents to allow Greyhawk to fully assess Delta's delay claim.

Hanover and Greyhawk continue to make a good faith effort to investigate Delta's delay claim and Greyhawk is prepared to review and analyze any further information that Delta can provide in support of its claim.

Thank you for your attention to this matter.

Very truly yours,

Dwight T. Burns, III

DTB

cc: Bert J. Capone, Esquire
Jennifer Whelan, Esquire